**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Fred's, Inc., *et al.*,[1] | Case No. 19-11984 (CTG) |
| Debtors. | (Jointly Administered) |
| FI Liquidating Trust, Plaintiff, vs. C.H. Robinson Company Inc., Defendant. | Adv. No. 21-51065 (CTG) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS AGAINST DEFENDANT, C.H. ROBINSON COMPANY INC.**

Dated: August 2, 2024

Ericka F. Johnson, Esq. (No. 5024)
BAYARD P.A.
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 429-4275
Facsimile: (302) 658-6395
E-mail:  ejohnson@bayardlaw.com
            *-and-*
Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Gary Underdahl, Esq., MN SBN 0301693
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*Counsel for Plaintiff*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Fred's Inc. (4010); Fred's Stores of Tennessee, Inc. (9888); National Equipment Management and Leasing, Inc. (4296); National Pharmaceutical Network, Inc. (9687); Reeves-Sain Drug Store, Inc. (4510); Summit Properties-Jacksboro, LLC (9161); Summit Properties-Bridgeport, LLC (2200); and 505 N. Main Opp, LLC (5850). The debtors' current mailing address is c/o FI Liquidating Trust, 27 Crimson King Drive, Bear, DE 19701.

TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ................................................................................. 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 2

III.    ARGUMENT ...................................................................................................... 10

   a.   Legal Standard for Summary Judgment ...................................................... 10

   b.   The Transfers Were Property of the Debtor ................................................ 10

   c.   Plaintiff's Prima Facie Case Is Satisfied.................................................... 11

        i.      The Transfers Were Made to Defendant, a Creditor of Debtor. .......................... 12

        ii.     The Transfers Were on Account of Debt Owed by the Debtor Before the
                Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning of
                11 U.S.C. § 547(b)(2). ................................................ 12

        iii.    The Debtor Was Insolvent at all Times During the Preference Period and Has the
                Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f)... 12

        iv.     The Transfers Occurred on or Within 90 Days of Petition Date. ........................ 13

        v.      The Transfers Enabled Defendant to Receive More than it Would Have Received
                if the Transfers Had not Been Made and the Defendant Received Payment of its
                Debt to the Extent Provided by the Bankruptcy Code........................................ 14

        vi.     The Plaintiff Need Not Introduce Evidence That Exceptions To Avoidance Set
                Forth In 11 U.S.C. § 547(c) Are Inapplicable To These Transfers. ..................... 15

   d.   Viewing the Facts In A Light Most Favorable To Defendant, The Defendant Cannot
        Prove By A Preponderance Of The Evidence That It Is Entitled To Its Purported Ordinary
        Course Of Business Defense Under 11 U.S.C. § 547(c)(2)............................................ 16

        i.      Elements of the Ordinary Course of Business Defense. ...................................... 16

        ii.     The Subjective Standard Under 11 U.S.C. § 547(c)(2)(A)................................... 17

        iii.    The Objective Standard Under 11 U.S.C. § 547(c)(2)(B). ................................. 23

   e.   Viewing the Facts in a Light Most Favorable to Defendant, The Defendant Is Entitled To
        Only Limited Protection From Avoidance Under 11 U.S.C. § 545(c)(4)'s New Value
        Defense ................................................................................. 24

f.   The Plaintiff Is Entitled to an Award of Prejudgment Interest from the Date of the Original Complaint............................................................................................................... 25

IV.   CONCLUSION............................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Abovenet, Inc. v. Lucent Technologies, Inc. (In re Metromedia Fiber Network, Inc.)*,
   2005 WL 3789133 (Bankr. S.D.N.Y. Dec. 20, 2005) ........................................................ 29

*Am. & Efrid, Inc. (In re Pillowtex Corp.)*,
   416 B.R. 123 (Bankr. D. Del. 2009) ...................................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ....................................................................................................... 10, 11

*Barnhill v. Johnson*,
   503 U.S. 393 (1992) ............................................................................................................... 15

*Big Wheel Holding Co., Inc. v. Fed. Wholesale Co. (In re Big Wheel Holding Co.)*,
   223 B.R. 669 (Bankr. D. Del. 1998) ...................................................................................... 23

*Briden v. Foley*, 776 F.2d 379 (1st Cir. 1985) ......................................................................... 14

*Burtch v. Conn. Cmty. Bank (In re J. Silver Clothing, Inc.)*,
   453 B.R. 518 (Bankr. D. Del. 2011) ...................................................................................... 11

*Burtch v. Detroit Forming, Inc. (In re Archway Cookies)*,
   435 B.R. 234 (Bankr. D. Del. 2010) ...................................................................................... 22

*Burtch v. Estate of Opus East, LLC (In re Opus East, LLC)*,
   528 B.R. 30 (Bankr. D. Del. 2015) ................................................................................... 31, 32

*Burtch v. Prudential Relocation, Inc. (In re AE Liquidation, Inc.)*,
   2013 WL 3778141 (Bankr. D. Del. July 17, 2013) ...................................................... 22, 23, 24

*Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dept. Stores, Inc.)*,
   470 B.R. 280 (S.D.N.Y. 20120) ............................................................................................ 23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................................... 10

*Corel Petroleum, Inc. v. Banque Paribas-London*,
   797 F.2d 1351 (5th Cir. 1986) ............................................................................................... 11

*Fruehauf Trailer Corp. v. Gen. Bearing Corp. (In re Fruehauf Trailer Corp.)*,
   96-01563 (PJW), 2008 WL 835693 (Bankr. D. Del. Mar. 27, 2008) ...................................... 14

*General Motors Corp. v Devex Corp.*,
   461 U.S. 648 (1983) ............................................................................................................... 33

*Hassett v. Altai, Inc. (In re CIS Corp.)*,
   214 B.R. 108 (S.D.N.Y. 1997) ......................................................................................... 18, 19

*Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Delaware, Inc.)*,
   320 B.R. 541 (Bankr. D. Del. 2004) ...................................................................................... 29

*Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC)*,
   346 B.R. 394 (Bankr. E.D.N.C. 2006) ............................................................................. 20, 21

*In re Art Shirt Ltd., Inc.*,
   93 B.R. 333 (E.D. Pa. 1988) ......................................................................................... 31

*In re Brazier Forest Products, Inc.*,
   921  F.2d 221 (9th Cir. 1990) ....................................................................................... 18

*In re Brothers Gourmet Coffees, Inc.*,
   271 B.R. 456 (Bankr. D. Del. 2002) ............................................................................. 15

*In re Bullion Reserve of N. Am.*,
   836 F.2d 1214 (9th Cir. 1988) ...................................................................................... 12

*In re Castillo*,
   39 B.R. 45 (Bankr. D. Colo. 1984) ............................................................................... 11

*In re Coco*, 67 B.R. 365 (Bankr. S.D.N.Y. 1986) ............................................................. 15

*In re Contempri Homes*,
   269 B.R. 124 (Bankr. M.D. Pa. 2001) .......................................................................... 14

*In re First Software Corp.*,
   81 B.R.211 (Bankr. D. Mass.1988) .............................................................................. 19

*In re Foreman Indus., Inc.*,
   59 B.R.  145 (Bankr. D. Ohio 1986) .......................................................................... 32, 33

*In re Forklift LP Corp.*,
   340 B.R. 735 (D.  Del.  2006) ....................................................................................... 23

*In re Keystone Foods, Inc.*,
   145 B.R.  502 (Bankr.  W.D.  Pa.  1992) ...................................................................... 17

*In re L&T Steel Fabricators, Inc.*,
   102 B.R. 511 (Bankr. N.D.La. 1989) ............................................................................ 32

*In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D. La. 1989) ........................ 32

*In re Molded Acoustical Products, Inc.*,
   18 F.3d 217 (3d  Cir.  1994) ..................................................................................... 20, 21, 29

*In  re  Radnor  Holdings  Corp.*,
   06- 10894(PJW), 2009 WL 2004226 (Bankr. D. Del. July 9, 2009) ................................. 12

*In re Total Tech. Serv., Inc.*,
   150 B.R. 893  (Bankr. D. Del. 1993) ............................................................................. 17

*In re TWA, Inc. Post Confirmation Estate*,
   327 B.R. 706 (Bankr. D. Del 2005) ............................................................................... 24

*In re USN Commc'ns, Inc.*,
   280 B.R. 573 (Bankr. D. Del. 2002) .............................................................................. 31

*In re Virginia-Carolina Fin. Corp.*, 954 F.2d 193 (4th Cir.  1992) ...................................... 17

*In re: AE Liquidation, Inc.*, 2015 WL 5301553 (D. Del. Sept. 10, 2015) ................................. 22

*J.F. Feeser, Inc. v. Serv-A-Portion,  Inc.*, 909 F.2d 1524 (3d Cir. 1990) ............................... 18

*Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*,
  2010 WL 4622449 (Bankr. S.D.N.Y. Nov. 4, 2010) ................................................. 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) .............................................. 11

*Matter of Tolona Pizza Prods. Corp.*,
  3 F.3d 1029 (7th Cir. 1993) ............................................................................ 21, 23

*Off. Comm. Of Unsecured Creditors of 360 networks v. U.S. Relocation Servs. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005) .................................. 27

*Official Comm. of Unsecured Creditors v. Juniper Commc'ns, Inc. (In re Network Access Solutions Corp.)*,
  320 B.R. 574 (Bankr. D. Del. 2005). ................................................................... 13

*Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.)*,
  2009 WL 2004226 (Bankr. D. Del. July 9, 2009) ................................................... 22

*Sass v. Vector Consulting, Inc. (In re Am. Home Mortgage Holdings, Inc.)*,
  476 B.R. 124 (Bankr. D. Del. 2012) .................................................................... 29

*Savage & Assoc. v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324 (Bankr. S.D.N.Y. 2008) ....... 16

*Scharffenberger v. United Creditors Alliance (In re Allegheny Health)*,
  292 B.R. 68 (Bankr. W.D. Pa. 2003) ................................................................... 16

*Schick v. Herskowitz (In re Schick)*,
  234 B.R. 337 (Bankr. S.D.N.Y. 1999) ............................................................. 12, 24

*Springel v. Prosser (In re Innovative Commc'ns Corp.)*,
  2011 WL 3439291 (Bankr. D.V.I. Aug. 5, 2011) ............................................... 31, 34

*Waslow v. The Interpublic Grp. Of Cos. (In re M Group, Inc.)*,
  308 B.R. 697 (Bankr. D. Del. 2004) ............................................................... 14, 16

*West Virginia v. United States*,
  479 U.S. 305 (1987) ..................................................................................... 33

Statutes

11 U.S.C. § 101(54) ........................................................................................ 16

11 U.S.C. § 547 ..................................................................................... 1, 2, 31

11 U.S.C. § 547(b) ........................................................................... 1, 12, 13, 18

11 U.S.C. § 547(b)(1) ..................................................................................... 13

11 U.S.C. § 547(b)(4) ................................................................................. 15, 16

11 U.S.C. § 547(b)(5) ...................................................................................... 16

11 U.S.C. § 547(c) .......................................................................................... 18

11 U.S.C. § 547(c)(2) .................................................................................. 19, 20

11 U.S.C. § 547(c)(2)(A) ...................................................................... 19, 20, 21, 24

11 U.S.C. § 547(c)(2)(B) ............................................................................. 19, 28

11 U.S.C. § 547(g) ............................................................................................... 13, 21

11 U.S.C. § 550................................................................................................... 31, 32

28 U.S.C. § 1961 ....................................................................................................... 34

PL 109–8, April 20, 2005, 119 Stat 23 ..................................................................... 19

Other Authorities

5 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 547 .04[2], (16th ed. 2010) ............................................................................................................ 21

Rules

Federal Rule of Bankruptcy Procedure 7056 ........................................................ 1, 10

Federal Rule of Civil Procedure 56(a)............................................................ 1, 10, 11

Federal Rule of Civil Procedure 56(c)..................................................................... 10

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, FI Liquidating Trust (the "Trustee" or "Plaintiff") submits this memorandum of law in support of its *Motion for Summary Judgment with Respect to Plaintiff's Claims Against Defendant, C. H. Robinson Company, Inc.* (the "Motion"). There are no material facts to dispute Plaintiff's *prima facie* case under 11 U.S.C. § 547(b).  Additionally, as set forth below, the undisputed material facts warrant  judgment as a matter of law in Plaintiff's favor on the affirmative defenses raised by C. H. Robinson Company, Inc. (the "Defendant").

## I.      SUMMARY OF ARGUMENT

Preference laws are designed to treat the unsecured creditors of a debtor equally, setting those unhappy creditors who received no payment at all in the 90 days before the petition date on equal footing with those "preferred" creditors fortunate enough to receive payment on owed debts during the same period. Once it is established that a creditor received payments during the preference period, the presumption is that a payment is preferential unless and until a creditor can affirmatively establish that some or all payments are protected from avoidance.

In the instant case, Plaintiff has satisfied each of the elements of its *prima facie* case against Defendant set forth in 11 U.S.C. § 547(b) as follows:

- The Transfers were presumptively property of the Debtors because the transfers were drawn from the Debtors' bank accounts.

- The Transfers were for the benefit of Defendant, and the Transfers were made to and received by Defendant, satisfying 11 U.S.C. § 547(b)(1).

- The Transfers were made on account of antecedent debt(s) owed by one or more of the Debtors as the transfers paid outstanding invoices due and owing, satisfying 11 U.S.C. § 547(b)(2).

- Defendant has provided no evidence to rebut the statutory presumption of 11 U.S.C. § 547(b)(3). Plaintiff is entitled to a presumption of insolvency under 11 U.S.C. § 547(f) and thus meets the requirements of 11 U.S.C. § 547(b)(3).

- The Transfers were made on or within 90 days of the Petition Date as evidenced by the payment detail, bank statements and check copies, satisfying 11 U.S.C. § 547(b)(4).

- As Defendant was an unsecured creditor of one or more of the Debtors, the Transfers enabled Defendant to receive more than it would have received through a hypothetical chapter 7 liquidation because the Debtors' other unsecured creditors will receive less than a 100% distribution. 11 U.S.C. § 547(b)(5) is satisfied as well.

Since there is no genuine issue of material fact as to each element of Plaintiff's *prima facie* case, the $3,454,012.88 in Transfers are avoidable unless: (1) the Transfers were made in the ordinary course of business or (2) the Transfers were protected from avoidance due to Defendant's provision of new value to the Debtors either contemporaneous to, or after, the Transfers, as codified by 11 U.S.C. § 547(c)(1), (c)(2), or (c)(4), and relevant case law.

Pursuant to 11 U.S.C. § 547(g), Defendant bears the burden of proof of its 11 U.S.C. § 547(c) defenses. However, because Defendant engaged in ever-increasing creditor pressure from the outset of the Preference Period by suspending shipments, credit holds, a reduction in payment terms and reduction in credit limits, it is unable to meet its ordinary course of business defense burden and only entitled to a limited amount of new value. Summary judgment for Plaintiff should therefore be granted as a matter of law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Federal Bankruptcy Rule 7056, Plaintiff contends the following facts are not in dispute:

**Undisputed Facts Concerning the Bankruptcy**

1.      On September 9, 2019 (the "Petition Date"), the Debtors each commenced Chapter 11 proceedings before the Bankruptcy Court for the District of Delaware. The 90-day period before the Petition Date was June 11, 2019 and September 9, 2019 (the "Preference Period").  The Court entered an order under Bankr. Rule 1015(b) authorizing joint administration of the Debtors' chapter 11 cases on September 10, 2019. [Bankruptcy Case No. 19-11984 Docket Index No. 52 (herein "Bankr. D.I. ___").] On September 10, 2019, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Bankr. D.I. 52].[2]

2.      On June 4, 2020, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Amended Joint Chapter 11 Plan for Fred's, Inc. and the Debtor Affiliates Set for Herein* confirming the *Modified Amended Joint Chapter 11 Plan for Fred's, Inc. and the Debtor Affiliates Set for Herein* (the "Confirmation Order" and "Plan," respectively). [Bankr. D.I. 1162].

3.      The effective date of the Plan (the "Effective Date") occurred on Jun 19, 2020. [Bankr. D.I. 1199]. In accordance with the Plan and Confirmation Order, the Trust was established effective as of the Effective Date of the Plan, and the Debtors and Anthony M. Saccullo as trustee entered into that certain Liquidating Trust Agreement.[3]

---

[2] All docket items referenced are from Case No. 19-11984, under which the Debtors' bankruptcy cases are jointly administered.

[3] *See* D.I. 1109.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Liquidating Trust Agreement.

4.      Pursuant to paragraph 9 of the Confirmation Order and Article VIII.J of the Plan, retained Causes of Action, including causes of action under chapter 5 of the Bankruptcy Code, were transferred to the Trust. [Bankr. D.I. 1162].

5.      Pursuant to paragraph 15 of the Confirmation Order, the implementation of substantive consolidation of the Debtors' estates, as provided for in Article II of the Plan, was approved. Upon the Effective Date of the Plan, "(a) all assets and all liabilities of the Plan Debtors shall be deemed merged into the Liquidating Trust, (b) all guaranties of any Plan Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and cancelled, (c) any obligation of any Plan Debtor and all guaranties thereof executed by one or more of the other Plan Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Plan Debtors, (d) all joint obligations of two or more Plan Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Plan Debtors, and (e) each Claim filed in the Chapter 11 Case of any Plan Debtor shall be deemed filed against the consolidated Plan Debtors and a single obligation of the consolidated Plan Debtors on and after the Effective Date." As further specified in Article II of the Plan, "(i) all assets and liabilities of the Debtors shall be merged, (ii) any obligations of any Debtor shall be deemed to be one obligation of the Debtors, (iii) any claims Filed or to be Filed in connection with any such obligation shall be deemed one claim against the Debtors, (iv) each Claim Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against the Debtors in the consolidated Chapter 11 Cases, in accordance with the substantive consolidation of the assets and liabilities of the Debtors, and (v) all transfers, disbursements and distributions made by any Debtor shall be deemed to be made by all of the Debtors."

6.      Pursuant to Article IV.A of the Plan and Article III of the *Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Debtors' Joint Plan* (the "Disclosure Statement"),[4] General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

7.      As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of 312 bank accounts (the "Bank Accounts") maintained at various financial institutions, including Regions Bank.

8.      Among these Bank Accounts, disbursements to vendors were made from the following accounts: accounts ending 3377 and 4352 held by Fred's Inc. at Regions Bank (collectively, the "Disbursement Accounts"). [*See* Bankr. D.I. 11]

9.      The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including Defendant. [*See id.*]

10.      During the Preference Period, the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

**Nature and Stage of the Adversary Proceeding**

---

[4] Bankr. D.I. 896.

[5] *See Debtors' Motion of for Entry of Interim and Final Order (I) Authorizing the Debtors to (A) Continue Existing Centralized Cash Management System, (B) Honor Certain Prepetition Obligations Related to The Use of The Cash Management System, and (C) Maintain Existing Bank Accounts and Check Stock and (II) Granting Related Relief*, incorporated here by reference (the "Cash Management Motion") [Bankr. D.I. 11]

5

11.     On September 8, 2021, Plaintiff filed a complaint to avoid transfers under 11 U.S.C. §§ 547, 548, and 550 and to disallow claims under § 502, initiating this adversary proceeding (the "Adversary Proceeding"). [D.I. 1] Defendant filed an answer to the Complaint on July 29, 2022 (the "Answer"). [D.I. 11]. The parties attended mediation on October 26, 2022, but did not settle. [D.I. 18].

12.     On or about June 3, 2022, Defendant served its responses to Plaintiff's requests for admission, and, on or about July 29, 2022, Defendant served its responses to Plaintiff's interrogatories, and requests for production of documents ("Defendant's Discovery Responses"). [D.I. 12].  Pursuant to the Order Approving Stipulation Extending Discovery Deadlines entered in this matter all fact and expert discovery closed on August 15, 2023.  [D.I. 22 and 22-1].  Pursuant to the Fifth Stipulation Extending the Deadlines entered in this matter, all dispositive motions are to be filed and served on or before August 2, 2024. [D.I. 26].

**Undisputed Facts Concerning the Debtors and Defendant**

13.     The Debtors and the Defendant began their relationship on or about April 25, 2019, just prior to the beginning of the Preference Period, whereby the Defendant and the Debtors entered into the Agreement for Transportation Brokerage (the "Agreement").  *See* Declaration of Anthony M. Saccullo (the "Saccullo Decl."), ¶ 7 attached hereto as Exhibit 1.

14.     Pursuant to the Agreement, the Debtors were to pay Defendant within thirty (30) days from invoice date for its transportation brokerage services.  *Id.* at ¶ 8.

15.     Additionally, Defendant imposed an initial credit limit of $3,000,000.00.  Saccullo Decl. ¶ 9; **Exhibit B** (Credit Line history).  Over the course of their brief relationship during the Preference Period, Defendant continued to lower the credit limit, ultimately ending at $1,000,000.00 on July 26, 2019.  *Id.*

16.     Even though the Debtors and Defendant began their business relationship in April 2019, just prior to the Preference Period, there were no pre-preference period transactions. Saccullo Decl. ¶ 10.  The first transfer was made within the Preference Period on July 1, 2019 (clearing Debtors' bank account on July 8, 2019). Saccullo Decl. ¶ 10; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); **Exhibit E** (Bank Statements and Check Copies).   During the Preference Period, Debtors paid Defendant on fifty-two (52) invoices prior to fifty-seven (57) days from invoice date to payment date.  Saccullo Decl. ¶ 10; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); **Exhibit E** (Bank Statements and Check Copies).

17.     Correspondence between the Debtors and the Defendant during the Preference Period shows Defendant reduction in payment terms and Debtors' line of credit, and withheld transportation services until payments were made by the Debtors. Saccullo Decl. ¶ 11; **Exhibit G** (Correspondence).

18.     Specifically, on July 11, 2019, Ashley Eyles, Defendant's Key Account Manager emailed Debtors' employee, Art Van Der Stuyf informing him that Defendant was placing Debtors on credit hold and would not ship products.  Saccullo Decl. ¶ 12; **Exhibit G** (Correspondence). In response, Debtors' CEO Joe Anto informed his AP department to make a "$300k" payment to resume shipping to stores.  *Id.*  He also stated Defendant was an "important vendor as any to [Debtors] right now." *Id.*  As a result, on July 12, 2019, the Debtors made two wire transfers to Defendant – one for $324,594.04 and another for an even $800,000.00.  Saccullo Decl. ¶ 12; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); **Exhibit E** (Bank Statements and Check Copies).

7

19.     Subsequently, on July 17, 2019, Defendant's employee, Jay Cornmesser, informed the Debtors that Defendant was reducing the payment terms from Net 30 days to Net 14 days and also reducing the credit limit to $1,000,000.00.  Saccullo Decl. ¶ 13; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); **Exhibit E** (Bank Statements and Check Copies); **Exhibit G** (Correspondence).

**Preference Period Transactions Between the Debtors and Defendant**

20.     During the Preference Period, the Debtors made, and Defendant received fifteen (15) transfers totaling $3,454,012.88 (the "Transfers"). Saccullo Decl. ¶ 14; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); *see also* Debtors' Cash Management Motion describing the Cash Management System and Disbursement Accounts (describing disbursements made to vendors) (Bankr. D.I. 11].

21.     The Transfers were made via check, wire transfer and ACH from the Debtors Disbursement Accounts to Defendant. Saccullo Decl. ¶ 15; **Exhibit C** (List of Transfers); **Exhibit D** (List of invoices paid by the Transfers); **Exhibit E** (Bank Statements and Check Copy); *see also* Debtors' Cash Management Motion describing the Cash Management System and Disbursement Accounts (describing disbursements made to vendors) (Bankr. D.I. 11].

22.     Defendant provided no more than $1,925,170.26 worth of allowed new value in the Preference Period. Saccullo Decl. ¶ 16*;* **Exhibit F** (Plaintiff's New Value Analysis).

23.     Each Transfer was made to or for Defendant's benefit or the benefit of a creditor. Saccullo Decl. ¶ 17; **Exhibit C** (List of Transfers); **Exhibit D** (List of invoices paid by the Transfers); **Exhibit E** (Bank Statements and Check Copy).

24.     At the time the Transfers were made, the Defendant was a creditor of the Debtors. Saccullo Decl. ¶ 18; **Exhibit A** (Agreement with Invoices); **Exhibit C** (List of Transfers);

8

**Exhibit D** (List of invoices paid by the Transfers); **Exhibit E** (Bank Statements and Check Copy).

25.     The Transfers were payments on antecedent debt, as the payments were made pursuant to an obligation that arose prior to the payments. Saccullo Decl. ¶ 19; **Exhibit A** (Agreement with Invoices); **Exhibit C** (List of Transfers); **Exhibit D** (List of invoices paid by the Transfers); **Exhibit E** (Bank Statements and Check Copy); **Exhibit G** (Correspondence).

26.     The Defendant had a right to receive each Transfer in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtor at the time the payment was made. Saccullo Decl. ¶ 20; **Exhibit A** (Agreement with Invoices); **Exhibit C** (List of Transfers); **Exhibit D** (List of invoices paid by the Transfers); **Exhibit E** (Bank Statements and Check Copy); **Exhibit G** (Correspondence).

27.     Pursuant to the Confirmation Order and Plan [Bankr. D.I. 1162], general unsecured claims are impaired. Saccullo Decl. ¶ 21. The filed disclosure statement [Bankr. D.I. 896] projected unsecured creditors to receive between 4.0 – 8.8% distributions on their claims. *Id*. The Debtors have continued the process of objecting to certain claims, and therefore have yet to complete their reconciliation of claims; however, the combination of secured and unsecured claims is far greater than available assets. Accordingly, distribution to general unsecured creditors will be far less than 100%. *Id*.

28.     However, Defendant admits it has no evidence to rebut the presumption of insolvency during the Preference Period. Saccullo Decl. ¶ 22; **Exhibit H** (Defendant's Responses to Plaintiff's First Set of Discovery Requests), Admission Resp. No. 8.

29.     Defendant did not hold a fully perfected security interest in the assets of the Debtors. Saccullo Decl. ¶ 23; **Exhibit A** (Agreement with Invoice); **Exhibit H** (Defendant's Responses to Plaintiff's First Set of Discovery Requests), Admission Resp. No. 10.

9

### III.  ARGUMENT

#### a.  Legal Standard for Summary Judgment

In accordance with Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Am. & Efrid, Inc. (In re Pillowtex Corp.)*, 416 B.R. 123, 126 (Bankr. D. Del. 2009). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is considered material if it might affect the outcome of the suit under governing law. *See Id*. at 248.

If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "'If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.'" *Burtch v. Conn. Cmty. Bank (In re J. Silver Clothing, Inc.)*, 453 B.R. 518, 525 (Bankr. D. Del. 2011) (quoting Fed. R. Civ. P. 56). "The mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

#### b.  The Transfers Were Property of the Debtor

"For a preference to be voided under Section 547, it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished." *Corel Petroleum,*

10

*Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355-56 (5th Cir. 1986), *rev denied*, 801 F.2d 398 (5th Cir. 1986) (quoting *In re Castillo*, 39 B.R. 45, 46 (Bankr. D. Colo. 1984)). Money paid from a bank account under the debtor's control is presumptively property of the debtor. *In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1217 (9th Cir. 1988), *cert denied* 486 U.S. 1056, 108 S. Ct. 2824, 100 L. Ed. 2d 925 (1988); *In re Radnor Holdings Corp.,* 06-10894 (PJW), 2009 WL 2004226, *2 (Bankr. D. Del. July 9, 2009) (citing *Schick v. Herskowitz (In re Schick)*, 234 B.R. 337, 343 (Bankr. S.D.N.Y. 1999)). In this case, the Transfers are presumptively the Debtor's property because the Transfers came from the Debtors' bank account.  Saccullo Decl. ¶ 15.

### c.  Plaintiff's Prima Facie Case Is Satisfied

When all inferences to be drawn from the underlying facts are viewed in the light most favorable to the Defendant, the pleadings and affidavits submitted in connection with this adversary proceeding show that there is no genuine issue as to the fact that the Plaintiff has alleged all of the necessary elements to satisfy its *prima facie* case under 11 U.S.C. § 547(b), and the Plaintiff is therefore entitled to judgment as a matter of law.

To be recoverable as a preferential transfer, a payment must satisfy all the requirements of 11 U.S.C. § 547(b).  Specifically, the transfer must have been:

(1) made to or for the benefit of a creditor;
(2) made for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made on or within ninety (90) days before the date of filing of the petition; and
(5) enabled the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b). The trustee or debtor in possession bears the burden of proving each of these elements by a preponderance of the evidence.  11 U.S.C. § 547(g); *Official Comm. of Unsecured*

*Creditors v. Juniper Commc'ns, Inc. (In re Network Access Solutions Corp.)*, 320 B.R. 574, 576 (Bankr. D. Del. 2005).

### i.  The Transfers Were Made to Defendant, a Creditor of Debtor.

The Defendant received the Transfers sought to be recovered by the Plaintiff, as listed on Exhibit A to the Complaint.  Saccullo Decl. ¶¶ 5 and 14.  The Transfers were made for the Defendant's benefit or the benefit of a creditor.  Saccullo Decl. ¶ 17.  Further, at the time Debtor made the Transfers, the Defendant was a creditor of the Debtor. *Id.* ¶ 1 8 . These facts provide uncontroverted evidence that the Transfers were made to the Defendant, a creditor of the Debtor. 11 U.S.C. § 547(b)(1).  Thus, the first element of Plaintiff's claim is conclusively established.

### ii.  The Transfers Were on Account of Debt Owed by the Debtor Before the Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning of 11 U.S.C. § 547(b)(2).

A debt is antecedent if the debt is incurred prior to the transfer in question. *Fruehauf Trailer Corp. v. Gen. Bearing Corp.* (*In re Fruehauf Trailer Corp.*), 96-01563 (PJW), 2008 WL 835693, *4 (Bankr. D. Del. Mar. 27, 2008) (quoting *In re Contempri Homes,* 269 B.R. 124, 127 (Bankr. M.D. Pa. 2001)). The facts in this case establish that the Transfers were payments on antecedent debt, as the payments were made pursuant to an obligation that arose prior to the payments. Saccullo Decl. ¶ 19. The Defendant had a right to receive each Transfer in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtor at the time the payment was made. *I d .* ¶ 20.  Thus, the second element of the Plaintiff's case is therefore established.

### iii.  The Debtor Was Insolvent at all Times During the Preference Period and Has the Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f).

For purposes of the third element, the debtor is presumed insolvent during the ninety days

12

preceding the filing of the petition.  *See* 11 U.S.C. § 547(f); *Waslow v. The Interpublic Grp. Of Cos. (In re M Group, Inc.)*, 308 B.R. 697, 700 (Bankr. D. Del. 2004). A creditor's lack of knowledge of the debtor's insolvency is no defense.  *See Briden v. Foley*, 776 F.2d 379, 381, n. 3 (1st Cir. 1985) ("The requirement that the creditor have reasonable cause to believe that the debtor was insolvent at the time of the transfers was eliminated by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984"); *In re Coco*, 67 B.R. 365, 371 (Bankr. S.D.N.Y. 1986). Because the Debtor has the benefit of this presumption, "[t]he party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent at the time of the transfer." *In re Brothers Gourmet Coffees, Inc.*, 271 B.R. 456 (Bankr. D. Del. 2002). A party seeking to avoid a transfer may rest upon the presumption if the creditor fails to produce some evidence of solvency. *Id.* If the party seeking to rebut the presumption fails, there is no material issue as to the Debtor's insolvency.  *Id.*

Defendant admits it has no evidence to rebut the presumption of insolvency during the Preference Period.  Saccullo Decl. ¶ 22.  The argument is developed no further. Further, the combination of secured and unsecured claims against the Debtors' bankruptcy estates greatly exceeds available assets.  Saccullo Decl. ¶ 21.  The Debtors are therefore presumed to have been insolvent during the ninety (90) days prior to the Petition Date. The Debtors' insolvency cannot be questioned and there is no issue as to the Plaintiff's success on this element of its claim.

### iv.   The Transfers Occurred on or Within 90 Days of Petition Date.

For purposes of Section 547(b)(4), a transfer by check occurs when the check is honored. *See Barnhill v. Johnson*, 503 U.S. 393, 400, 112 S. Ct. 1386, 1390 (1992) ("for the purposes of payment by ordinary check, therefore, a 'transfer' as defined by § 101(54) occurs on the date of honor, and not before"). The Preference Period in  this matter is June 11, 2019 through and

including September 9, 2019. The Transfers were made during the Preference Period. Saccullo Decl. ¶ 14. Section 547(b)(4)(A) is therefore satisfied.

**v.    The Transfers Enabled Defendant to Receive More than it Would Have Received if the Transfers Had not Been Made and the Defendant Received Payment of its Debt to the Extent Provided by the Bankruptcy Code.**

Whether a transfer meets the test of Section 547(b)(5) of the Bankruptcy Code requires the formulation of a hypothetical Chapter 7 distribution of the debtor's estate as it existed on the bankruptcy petition date. *Savage & Assoc. v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008). The Court must determine whether the creditor obtained more pursuant to the transfer than the creditor would have received in a Chapter 7 distribution without the transfer. 11 U.S.C. § 547(b)(5); *In re M Group, Inc.*, 308 B.R. at 700.

"Courts have consistently held that as long as the distribution in bankruptcy is less than 100 percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *Id.* (citing *Scharffenberger v. United Creditors Alliance (In re Allegheny Health)*, 292 B.R. 68, 78 (Bankr. W.D. Pa. 2003)); s*ee also In re Virginia-Carolina Fin. Corp.*, 954 F.2d 193, 198-99 (4th Cir. 1992); *accord In re Keystone Foods, Inc.*, 145 B.R. 502, 509 (Bankr. W.D. Pa. 1992). Therefore, a transfer is usually preferential if the distribution to unsecured trade creditors is less than 100% because a payment to a trade creditor during the preference period would enable that creditor to receive a 100% payment. *See In re Total Tech. Serv., Inc.*, 150 B.R. 893 (Bankr. D. Del. 1993).

In the instant case, pursuant to the Confirmation Order and Plan [Bankr. D.I. 1162], general unsecured claims are impaired. Saccullo Decl. ¶ 21. The filed disclosure statement [Bankr. D.I. 896] projected unsecured creditors to receive between 4.0 – 8.8% distributions on

14

their claims. *Id*. The process of objecting to certain claims continues, and therefore the reconciliation of claims has yet to be completed; however, the combination of secured and unsecured claims is far greater than available assets. Accordingly, distribution to general unsecured creditors will be far less than 100%. *Id.* Further, the Defendant is an unsecured creditor, as it did not hold a perfected security interest in the assets of the Debtor with respect to the Transfers. Saccullo Decl. ¶ 23.

The Plaintiff has accordingly met its burden of proving that the Transfers enabled the Defendant to receive more than it would have received had the Debtors filed a Chapter 7 case without having made the Transfers at issue.

The pleadings in this adversary proceeding, together with the declaration and exhibits, show there is no genuine issue as to any material fact with respect to the avoidability of the Transfers under Section 547(b). Accordingly, unless the Defendant can establish any affirmative defenses under Section 547(c), the Plaintiff is entitled to judgment as a matter of law.

> **vi. The Plaintiff Need Not Introduce Evidence That Exceptions To Avoidance Set Forth In 11 U.S.C. § 547(c) Are Inapplicable To These Transfers.**

The moving party on summary judgment has no burden to negate or disprove matters for which the opponent has the burden of proof at trial. Indeed, the moving party need not produce any affirmative evidence at all on those matters. *See In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). The Defendant has the burden of proving the non-avoidability of the Transfers by a preponderance of the evidence, and the Plaintiff, as the moving party, may simply point to the absence of such to make its case. *See J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990); *Hassett v. Altai, Inc.* (*In re CIS Corp.*), 214 B.R. 108, 119 (S.D.N.Y. 1997). Moreover, "[b]ecause of the policy served by preference law, courts have repeatedly held that the exceptions contained in 11 U.S.C. § 547(c), including the

15

ordinary course of business exception, 'should be narrowly construed.'" *In re CIS Corp.*, 214 B.R. at 119-20 (quoting, *inter alia*, *In re First Software Corp.*, 81 B.R.211, 213 (Bankr. D. Mass. 1988)).

Defendant asserts three affirmative defenses in its answer. *See* D.I. 11, pp. 10.  The first defense—that the Preference Period transfers were made in the ordinary course of business (both subjective and objective) and the second defense – that Defendant provided subsequent new value - will be addressed below.  *Id.*  The third affirmative defense – that the Transfers were received in good faith and for reasonably equivalent value - will not be addressed at this time, as Plaintiff's section 548(a)(1)(B) claim is an alternative claim.  Defendant has not articulated this defense any further than its boilerplate inclusion in the Answer.

> **d.  Viewing the Facts In A Light Most Favorable To Defendant, The Defendant Cannot Prove By A Preponderance Of The Evidence That It Is Entitled To Its Purported Ordinary Course Of Business Defense Under 11 U.S.C. § 547(c)(2).**

> **i.  Elements of the Ordinary Course of Business Defense.**

Section 547(c) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("<u>BAPCPA</u>"),[6] permits a "safe harbor" for a transferee of a preferential payment that can satisfy the requirements set forth in either 11 U.S.C. § 547(c)(2)(A) or § 547(c)(2)(B):

> (c) The trustee may not avoid under this section a transfer –
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

---

[6] PL 109–8, April 20, 2005, 119 Stat 23.

This section, as amended, provides for two "separate, independent" defenses. *See Hutson v. Branch Banking & Trust Co. (In re Nat'l Gas Distrib., LLC)*, 346 B.R. 394, 396 (Bankr. E.D.N.C. 2006) (stating that the post-BAPCPA version of Section 547(c)(2) includes an "ordinary course of business" defense under subsection (A), as well as an "ordinary business terms" defense under subsection (B)).

The preference statute is designed to recover preferences not only from a "pushy" unsecured creditor, but also in situations where a "fawning debtor" uses a transaction to advantage a favored creditor. *In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 223 (3d Cir. 1994). A transfer is therefore preferential not only when a creditor undertakes actions to advantage itself at the expense of other creditors, but also when a debtor's favored treatment to a creditor ensures that the creditor receives payment while other creditors remain unpaid. Such payments go against the Bankruptcy Code's objective of treating all creditors equally.

### ii.    The Subjective Standard Under 11 U.S.C. § 547(c)(2)(A).

The ordinary course of business defense "'is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *In re Nat'l Gas Distrib., LLC)*, 346 B.R. at 396. (quoting 5 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 547 .04[2], at 547–51 (16th ed. 2010)). Under the so-called subjective test of Section 547(c)(2)(A), a defendant must prove by a preponderance of the evidence that the transfers were made in the ordinary course of dealings between the debtor and the creditor. 11 U.S.C. § 547(c)(2)(A); 547(g). The transfers at issue should "conform to the norm established by the debtor and creditor in the period before, preferably well before, the preference period." *In re Molded Acoustical Prods., Inc.*, 18 F.3d 217, 223 (3d Cir. 1994) (citing *Matter of Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th

17

Cir. 1993)).

Courts examine a variety of factors when determining whether preference period payments are subjectively ordinary between the parties, including:

> (i) the length of time the parties engaged in the type of dealing at issue; (ii) whether the subject transfers were in an amount more than usually paid; (iii) whether the payments at issue were tendered in a manner different from previous payments; (iv) whether there appears to have been an unusual action by the creditor or debtor to collect on or pay the debt; and (v) whether the creditor did anything to gain an advantage (such as obtain additional security) in light of the debtor's deteriorating financial condition.

*Burtch v. Prudential Relocation, Inc. (In re AE Liquidation, Inc.)*, 2013 WL 3778141 at *5 (Bankr. D. Del. July 17, 2013) *aff'd in part*, *sub nom.* (*In re: AE Liquidation, Inc.*, 2015 WL 5301553 (D. Del. Sept. 10, 2015)). While the Court examines these multiple factors when determining whether payments were made in the ordinary course of business, it has noted that courts place particular emphasis on the timing of payments. *See In re AE Liquidation,* 2013 WL 3778141 at *5 (citing *Burtch v. Detroit Forming, Inc. (In re Archway Cookies),* 435 B.R. 234, 241-42 (Bankr. D. Del. 2010)); *Radnor Holdings Corp. v. PPT Consulting, LLC (In re Radnor Holdings Corp.)*, 2009 WL 2004226, *5 (Bankr. D. Del. July 9, 2009).

Late payments are typically not ordinary unless the creditor establishes a consistent pattern of late payment between the parties.[7] *See, e.g., In re Forklift LP Corp.,* 340 B.R. 735, 739

---

[7] The *Tolona* court provided an apt explanation on why late payments are considered preferential:

> It may seem odd that paying a debt late would ever be regarded as a preference to the creditor thus paid belatedly. But it is all relative. A debtor who has entered the preference period—who is therefore only 90 days, or fewer, away from plunging into bankruptcy—is typically unable to pay all his outstanding debts in full as they come due. If he pays one and not the others, as happened here, the payment though late is still a preference to that creditor, and is avoidable unless the conditions of section 547(c)(2) are met. One condition is that payment be in the ordinary course of both the debtor's and the creditor's business. A late payment normally will not be. It will therefore be an avoidable preference.

18

(D. Del. 2006) (citing *Big Wheel Holding Co., Inc. v. Fed. Wholesale Co. (In re Big Wheel Holding Co.),* 223 B.R. 669, 674 (Bankr. D. Del. 1998).  Early payments are likewise considered out of the ordinary course of business if the defendant does not produce evidence that early payment was the norm between the parties prior to the preference period. *See, e.g., In re AE Liquidation,* 2013 WL 3778141 at *6 (citing *Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dept. Stores, Inc.)*, 470 B.R. 280, 285 (S.D.N.Y. 20120); *Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, 2010 WL 4622449 at *4 (Bankr. S.D.N.Y. Nov. 4, 2010)); *In re TWA, Inc. Post Confirmation Estate*, 327 B.R. 706 (Bankr. D. Del 2005).

In order to establish the subjective criteria of 11 U.S.C. § 547(c)(2)(A), a creditor must generally produce some evidence of the "baseline of dealings" between the parties to "enable the court to compare the payment practices during the preference period with the prior course of dealings." *Schick v. Herskowitz (In re Schick)*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999). This often involves an examination of the average days to pay in the historical period as compared to the preference period. *See, e.g., In re AE Liquidation,* 2013 WL 3778141 at *6 (reviewing increase in timing based on change in average); *In re M. Fabrikant & Sons, Inc.,* 2010 WL 4622449 at *3 ("[t]he starting point—and often ending point—involves the consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory").

Defendant does not have a valid subjective ordinary course of business defense.  First, there is no pre-preference payment history with which to compare the Preference Period transfers. The parties began their business relationship with the execution of the Agreement in April 2019

---

*Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1032 (7th Cir. 1993).

19

just prior to the start of the Preference Period with payment terms of net thirty (30) days. Saccullo Decl. ¶ 8. Subsequently, after Defendant halted shipments due to lack of payments, Defendant reduced terms to Net 14 days. Saccullo Decl. ¶ 13. Defendant may make the argument that since some of the invoices were paid within terms, the Preference Period transfers were ordinary and ordinary within the applicable industry. However, just because invoices may have paid within terms does not make them ordinary. *See Off. Comm. Of Unsecured Creditors of 360 Networks v. U.S. Relocation Servs. (In re 360Networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005) (collection pressure which induces a debtor to pay may make even statistically timely payments unordinary if that very timeliness was the result of or follows such pressure); *see also TWA, Inc. Post Confirmation Estate v. World Aviation Supply, Inc. (In re TWA, Inc. Post Confirmation Estate)*, *110 327 B.R. 706 (Bankr. D. Del.2005) (the fact that transfers are made within credit terms does not insure that such transfers were in the ordinary course of business).

Statistically, based on a review of the payment records and analysis of the payment history between the parties during the Preference Period, all of the Transfers paid invoices prior to fifty-seven (57) days past invoice date. Saccullo Decl. ¶ 10. At the outset of the parties' relationship, the Debtors paid invoices beyond the initially agreed upon net thirty (30) day terms and, arguably, those invoices paid within the net thirty (30) day terms, and even later, the reduced net fourteen (14) day terms, were paid under duress as evidenced by the Defendant's hold on shipments, reduction in payments terms, credit line reductions, and the Debtors subsequent response recognizing the importance of Defendant's services before making the transfers.

It is "well settled" that payments made because of economic pressure or debt collection practices not common to the industry are not made in the ordinary course of business. *360Networks (*338 B.R. at 210. Accordingly, even if payments during the preference period were

20

timely in comparison with prior payments other factors, such as collection pressure, may remove the payments from the ordinary course of business defense. *Id*. at 211.

Creditor pressure can include an acceleration of payments, a change in credit terms imposed upon the parties' transactions, or a threat to stop shipments which spurs the debtor to pay, etc. *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443 (Bankr. S.D. Ohio 2004); *Halperin v. All Am. Poly Corp. (In re FBI Wind Down)*, 581 B.R. 116, 143 (Bankr. D. Del. 2018) (finding the threatening of account holds to be unusual collection activity); *Gold Force Int'l, Ltd. v. Off. Comm. of Unsecured Creditors of Cyberrebate.com, Inc.*, No. 03 CV 5982(JG), 2004 WL 287144, at *5 (E.D.N.Y. Feb. 10, 2004) (finding that the creditor engaged in pressure tactics and that the payments were not within the ordinary course of business where it attempted to suspend trading (delayed shipment of goods) due to payment delays and made phone calls to inquire about the status of payment and resent invoices for that payment); *Braniff Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773, 781 (Bankr. M.D. Fla. 1993) (finding that there were unusual debt collection effectors where the creditor made threats to stop shipment of new merchandise unless payment were made on outstanding invoices). Accordingly, courts have held that any payment made following unusual or varying creditor pressure, including account holds and suspension of shipments, is outside the ordinary course of business for the parties.

Collection pressure which induces a debtor to pay may make even statistically timely payments unordinary if that very timeliness was the result of or follows such pressure. *See 360Networks*, 338 B.R. at 210. The emails from Defendant's employees, and the Debtors' subsequent responses, paint a picture of unending pressure from the outset of the Preference Period, including credit and shipment holds, reduction in payment terms and a reduction in credit

21

line from the Defendant all of which induced the Debtors to keep paying Defendant:

- July 11, 2019 - Ashley Eyles, Defendant's Key Account Manager emailed Debtors' employee, Art Van Der Stuyf informing him that Defendant was placing the Debtors on credit hold and would not ship products. Saccullo Decl. ¶ 12; **Exhibit G** (Correspondence). In response, Debtors' CEO Joe Anto informed his AP department to make a "$300k" payment to resume shipping to stores. *Id.* He also stated Defendant was an "important vendor as any to [Debtors] right now." *Id.*

- July 12, 2019 - As a result, on July 12, 2019, the Debtors made two wire transfers to Defendant – one for $324,594.04 and another for an even $800,000.00. Saccullo Decl. ¶ 12; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); **Exhibit E** (Bank Statements and Check Copies).

- July 17, 2019 - Defendant's employee, Jay Cornmesser, informed the Debtors that Defendant was reducing the payment terms from Net 30 days to Net 14 days and also reducing the credit limit to $1,000,000.00. Saccullo Decl. ¶ 13; **Exhibit C** (List of Transfers); **Exhibit D** (Preference Period Paid Invoice Detail); **Exhibit E** (Bank Statements and Check Copies); **Exhibit G** (Correspondence).

Defendant engaged in an ever-increasing creditor pressure with the Debtors at the outset of the Preference Period. It is made clear from the email correspondence that less than three months after the parties entered into the Agreement, on or about July 11, 2019, Defendant stopped shipments and put the Debtors on credit hold in order to induce the Debtors to make the July 12, 2019 payments of $324,594.04 and an even amount of $800,000.00 in order to release shipments. Further, as if that was not enough, no less than one week after Defendant withheld shipments, Defendant reduced payment terms to net 14 days and reduced the Debtors credit limit to

22

$1,000,000.00. Whether statistically aligned with the payment terms or not, the withheld shipments, credit holds, reduction in payment terms and reduction in credit limits in order to pay down old debt and the payments following these communications are exactly the types of behavior which should not be rewarded by the application of the ordinary course of business defense.

Given the importance of the Defendant to the Debtors business, this forced the Debtors to pay Defendant quicker than the originally agreed upon terms and to the detriment of hundreds of other creditors.  But for the suspension of shipments, credit holds, reduction in payment terms and reduction in credit limits, the Debtors would not have paid the invoices within payment terms and may not even have made certain transfers.  Accordingly, none of the Transfers are protected by the subjective defense.

### iii.   The Objective Standard Under 11 U.S.C. § 547(c)(2)(B).

Section 547(c)(2)(B) is an objective test which "looks not to the specifics of the transaction between the debtor and the particular creditor, but rather focuses on general practices in the industry, in particular the industry of the creditor." *Abovenet, Inc. v. Lucent Technologies, Inc. (In re Metromedia Fiber Network, Inc.)*, 2005 WL 3789133, *5 (Bankr. S.D.N.Y. Dec. 20, 2005); *see also Sass v. Vector Consulting, Inc. (In re Am. Home Mortgage Holdings, Inc.),* 476 B.R. 124, 140-41 (Bankr. D. Del. 2012) (discussing that creditor must establish range of terms on which firms similar to the creditor operate); *Hechinger Liquidation Trust v. James Austin Co. (In re Hechinger Inv. Co. of Delaware, Inc.),* 320 B.R. 541, 550 (Bankr. D. Del. 2004) (citing *In re Molded Acoustical Prod.*, 18 F.3d 217, 224 (3d Cir. 1994) for proposition that ordinary business terms encompass the range of terms engaged by firms similar to the creditor).

Defendant has submitted no evidence to suggest that it can meet the burden of establishing

23

that the Transfers were made according to objective ordinary business terms in the Debtors' and Defendant's respective industries pursuant to 11 U.S.C. § 547(c)(2)(B). Defendant has failed to meet its burden as to this affirmative defense, and the discovery period has closed.  Accordingly, summary judgment should be granted in the Plaintiff's favor.

### e. Viewing the Facts in a Light Most Favorable to Defendant, The Defendant Is Entitled To Only Limited Protection From Avoidance Under 11 U.S.C. § 545(c)(4)'s New Value Defense

Pursuant to 11 U.S.C. § 547(c)(4), the Bankruptcy Code excepts from avoidance preferential transfers to the extent that the creditor subsequently extends goods or services to the debtors. Defendant may assert that a portion of its section 547(b) liability is shielded by this "subsequent new value" defense. In order to prevail on this defense, Defendant must establish that, subsequent to receipt of the Transfers, Defendant contributed new value to the Debtors: (i) not secured by an otherwise unavoidable security interest; and (ii) on account of which new value the Debtors did not make an otherwise unavoidable transfer to or for the benefit of Defendant. See 11 U.S.C. § 547(c)(4).

Although not required to provide affirmative evidence on this defense, Plaintiff nonetheless conducted an analysis of the new value supplied by Defendant as well as the Debtors, and concluded that Defendant provided no more than $1,923,624.28 worth of allowed new value in the Preference Period. Saccullo Decl. ¶ 16; **Exhibit F** (Plaintiff's New Value Analysis). Although Defendant asserts it supplied value during the Preference Period, Defendant has failed to produce invoices, bills of lading and shipping dates supporting any further value extended to the Debtors subsequent to the Transfers.  Saccullo Decl. ¶ 16; **Exhibit H** (Defendant's Responses to Plaintiff's First Set of Discovery Requests), Interrog. Resp. No. 4; **Exhibit F** (Plaintiff's New Value Analysis).  Accordingly, for purposes of this Motion, Plaintiff is willing to allow Defendant new

value credit in the amount of $1,923,624.28, and the avoidable net preference becomes $1,528,842.61.

### f. The Plaintiff Is Entitled to an Award of Prejudgment Interest from the Date of the Original Complaint.

It is within a court's discretion to grant prejudgment interest in actions brought under 11 U.S.C. § 547. *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 574 (3d Cir. 2007); *Burtch v. Estate of Opus East, LLC (In re Opus East, LLC)*, 528 B.R. 30, 108-109 (Bankr. D. Del. 2015); *In re USN Commc'ns, Inc.*, 280 B.R. 573, 601 (Bankr. D. Del. 2002); *In re Art Shirt Ltd., Inc.*, 93 B.R. 333, 342 (E.D. Pa. 1988).

Section 550 of the Bankruptcy Code allows the Plaintiff to recover the value of property transferred under 11 U.S.C. § 547.[8] Section 550 restores the estate to the *full value* of the asset transferred to the preferred creditor, thereby compensating the estate for the loss of the time value of the asset. *See Springel v. Prosser (In re Innovative Commc'ns Corp.)*, 2011 WL 3439291, *49 (Bankr. D.V.I. Aug. 5, 2011) ("an award of prejudgment interest in an avoidance action furthers the congressional policies of the Bankruptcy Code by compensating the estate for the time it was without the use of the transferred funds."); *In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. N.D. La. 1989). Section 550 provides that the Plaintiff can recover a preferential transfer or its value. 11 U.S.C. § 550. Value includes prejudgment interest "from the date of demand for return of the preference or, in the absence of a prior demand, from the date of the commencement of the adversary proceeding." *In re Opus East,* 528 B.R. at 108 (internal quotations omitted).

---

[8] 11 U.S.C. § 550(a) states in relevant part: "To the extent that a transfer is avoided under Section . . . 547 . . . of this Title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made … ."

25

The Bankruptcy Code's policy of equal distribution to creditors favors the award of prejudgment interest from the date of filing the original complaint. In *In re Foreman Indus., Inc.*, 59 B.R. 145 (Bankr. D. Ohio 1986), the court stated as follows:

> It is necessary to recognize that if litigation to recover a pre-filing transfer is successful, **recovering only the amount originally transferred is not adequate.** Not only would the one creditor have received one hundred percent of the amount owed by debtor, but the creditor would have also had total control of and use of the property transferred, including the opportunity to simply invest the amount in question . . . at the same time, the debtor's estate would have been deprived not only of the property transferred, to which it was rightfully entitled, but also the control and use of the property, particularly for investment purposes. In such a situation, all creditors and claimants of the estate would have had the amount they were entitled to receive diminished not merely by the wrongful transfer of the funds, but also by the continued retention of those funds.

*Id.* at 155 (emphasis added). The time value of money is an asset of the estate that should be recovered for the benefit of all creditors under the policy in the Bankruptcy Code, which favors equal treatment for all creditors of a bankruptcy estate.

By awarding prejudgment interest from the date of the original complaint, both the estate and the transferee are restored to the economic position each occupied before the preferential transfer. In other words, the status quo ante is achieved. Prejudgment interest is not a penalty, but rather is viewed as "delayed damages to be awarded as a component of compensation to the prevailing party." *General Motors Corp. v Devex Corp.*, 461 U.S. 648, 654 n.10 (1983); *see also West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987).

Prejudgment interest may therefore be recovered by Plaintiff "from the date of commencement of this action at the federal judgment interest rate in effect as of that date." *In re Innovative Commc'ns Corp.*, 2011 WL 3439291 at *49. The interest rate pursuant to 28 U.S.C. § 1961(b) is the rate applicable to one year Treasury maturities for the week preceding the date the

complaint was filed. *Id*. The original complaint in this Adversary Proceeding was filed on September 8, 2021. The applicable prejudgment interest rate is accordingly 0.07%. *See* Succullo Decl. ¶ 25.

In the instant case, as of July 29, 2024, prejudgment interest from the date of the filing of the original complaint has accrued in the amount of $3,105.02. This amount is computed on the $1,528,842.61 in net preference payments sought to be recovered and calculated at the Federal Rate of Interest as of September 8, 2021 (0.07%). Accordingly, prejudgment interest continues to accrue at a per diem rate of $2.93.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting the Motion in its entirety and entering judgment in favor of Plaintiff in the principal amount of $1,528,842.61, plus prejudgment interest from the date of the filing of the Complaint on September 8, 2021, through August 2, 2024 in the additional amount of $3,105.02, for a total of $1,531,947.63.

Dated: August 2, 2024

**BAYARD P.A.**

/s/ *Ericka F. Johnson*_____
Ericka F. Johnson, Esq. (No. 5024)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 429-4275
Facsimile: (302) 658-6395
E-mail:  ejohnson@bayardlaw.com


*-and-*

**ASK LLP**

By:  /s/  *Joseph L. Steinfeld, Jr.*_____
Joseph L. Steinfeld, Jr., Esq., MN SBN
0266292
Gary Underdahl, Esq., MN SBN 0301693
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 289-3857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*Counsel for Plaintiff*